UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREY DIRECT, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 5790 |
| | ) | |
| ERIE INSURANCE EXCHANGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In its Second Amended Complaint, Plaintiff Grey Direct, Inc. ("Grey Direct") alleges that Defendant Erie Insurance Exchange ("Erie") breached its duty to defend and duty to indemnify under the terms of an insurance policy. Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[1] For the following reasons, the Court grants Erie's motion for summary judgment and denies Grey Direct's motion for summary judgment.

## FACTUAL BACKGROUND

### I.  Introduction

Grey Direct is a Delaware corporation with its principal place of business in New York. (R. 61-1, Def.'s Local Rule 56.1 Stmt. Facts, ¶ 1.) Erie is a Pennsylvania corporation with its

---

[1] Grey Direct moves the Court for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Because the Court must look beyond the pleadings in weighing the issues raised in Grey Direct's motion, the Court converts Grey Direct's motion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(c); *Dempsey v. Atchison, Topeka & Santa Fe Ry.,* 16 F.3d 832, 835-36 (7th Cir. 1994). Further, due to Erie's motion for summary judgment, Grey Direct has had the opportunity to develop the facts and arguments at issue in this matter.

principal place of business in Pennsylvania. (*Id*. ¶ 2.) CommDirect, Inc. ("CommDirect") is a direct mail advertising production company. (*Id*. ¶ 6.) The sole shareholder of CommDirect, Mary Manade ("Manade") and her husband started a separate corporation, Unicomm Direct, Inc. ("Unicomm Direct") in May 2001. (R. 69-1, Grey Direct's Local Rule 56.1 Stmt. Addl. Facts, ¶ 1.) Unicomm Direct had personalization, bindery, and inserting equipment to do the physical work of direct mailing. (*Id*. ¶ 2, Def.'s Stmt. ¶ 9.)

## II.  Grey Direct's Advertising Campaign

Grey Direct managed the "Fly Three, Fly Free" advertising campaign for United Air Lines. (Def.'s Stmt. ¶ 10.) If a customer purchased three round trip tickets on United Air Lines, the customer qualified for one free round trip ticket. (*Id*.) On July 16, 2003, Grey Direct contracted with CommDirect to print, address, and mail travel certificates for free round trip tickets to qualified customers. (*Id*. ¶ 11; R. 63-1, Pl.'s Resp. to Def.'s Stmt. ¶ 11.) CommDirect brokered the work to Unicomm Direct. (Def.'s Stmt. ¶ 12.) On September 11, 2003, Unicomm Direct mailed two travel certificates – instead of one – to 5,997 qualified customers, and thus Grey Direct had to honor more travel certificates than it expected. (*Id*. ¶ 24.)

In a letter dated September 18, 2003, Manade, on behalf of Unicomm Direct, notified Grey Direct of the September 11, 2003 duplication error. (*Id*. ¶ 25; R. 49-1, Second Ad. Compl. ¶ 15(c), Ex. D.) On September 24, 2003, Manade signed an agreement with Grey Direct in which she agreed, among other things, to obtain "Errors and Omissions Insurance Policies." (Def.'s Stmt. ¶ 27; Pl.'s Resp. to Def.'s Stmt. ¶ 27.)

## III.  Insurance Policy & Endorsement

In early August 2003, Manade contacted Chris Bechtold of the Bechtold Insurance

2

Agency to obtain business owners' insurance for Unicomm Direct. (Def.'s Stmt. ¶¶ 14, 15.) Thereafter, Bechtold arranged for Erie to provide insurance coverage for Unicomm Direct. (*Id.* ¶¶ 12, 18; Pl.'s Stmt. ¶ 5.) On September 4, 2003, Erie issued Unicomm Direct an insurance policy that was in effect from August 25, 2003 to August 25, 2004. (Second Ad. Compl., Ex. A; Def.'s Stmt. ¶ 21.) This original insurance policy did not contain a Printers Errors and Omissions endorsement. (Def.'s Stmt. ¶ 19.)

Around October 15, 2003, Manade contacted Bechtold and requested information concerning Printers Errors and Omissions coverage for Unicomm Direct. (*Id.* ¶ 29.) On October 23 or 24, 2003, Manade told Bechtold to add the Printers Errors and Omissions endorsement to Unicomm Direct's underlying insurance policy. (*Id.* ¶ 31.) On October 24, 2003, Erie issued an amended declaration stating that the Printers Errors and Omissions coverage was effective as of October 15, 2003. (*Id.* ¶¶ 35, 36; R. 51-1, Def.'s Resp. Memo. to Judgment on Pleadings, Ex. C.) On January 8, 2004, Erie issued another amended declaration stating that the Printers Errors and Omissions coverage was effective as of August 25, 2003. (Second Ad. Compl., Ex A.)

## PROCEDURAL BACKGROUND

On December 3, 2003, Grey Direct filed a complaint against CommDirect, but not Unicomm Direct, in federal district court concerning the "Fly Three, Fly Free" advertising campaign. (Def.'s Stmt. ¶¶ 43, 44.) On May 20, 2004, Grey Direct voluntarily dismissed the action against CommDirect. (03 C 8774, R.15-1.) Meanwhile, on May 11, 2004, Grey Direct filed a claim for breach of contract against Unicomm Direct. (Case No. 04 C 3328, R. 1-1). On June 22, 2004, Judge Der-Yeghiayan of the United States District Court for the Northern District of Illinois entered a default judgment against Unicomm Direct in the amount of $967,720, plus

court costs and attorney's fees. (Case No. 04 C 3328, R. 5-1.) On August 26, 2004, Judge Der-Yeghiayan entered an "Agreed Order for the Turnover Rights to Insurance Policy," that assigned Unicomm Direct's insurance policy rights against Erie to Grey Direct. (*Id.*, R. 10-1.) On September 2, 2004, Grey Direct filed the present action against Erie alleging breach of Erie's duties to defend and indemnify Unicomm Direct in the underlying action. (R. 1-1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Id.* at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## ANALYSIS

Grey Direct contends that Erie breached its duty to defend and indemnify Unicomm Direct based on the Printers Errors and Omissions endorsement. Erie, on the other hand, argues that it had no duty to defend or indemnify because the September 11, 2003 duplication error was a "known loss" and that Manade knew of this loss before she purchased the Printers Errors and

4

Omissions coverage on October 23 or 24, 2003.

In general, an insurance policy is based on contingent or future risks that may or may not occur. *Outboard Marine v. Liberty Mut. Ins.*, 154 Ill.2d 90, 103, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). If an insured knows or has reason to know that she has already suffered a loss at the time of purchasing an insurance policy, the risk is no longer contingent, but is considered a "known loss." *Id.* at 104. Accordingly, for the known loss doctrine to apply, an insured must know or reasonably know that at the time she purchased insurance there was a substantial probability that a loss had already occurred. *See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.,* 138 F.Supp.2d 1088, 1100 (N.D. Ill. 2001) (citing *St. Paul Fire & Marine Ins. Co. v. Lefton Iron & Metal Co.,* 296 Ill.App.3d 475, 230 Ill.Dec. 771, 694 N.E.2d 1049, 1055 (Ill.App.Ct. 1998)). If the insured has such knowledge, "the insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio*, unless the parties intended the known loss to be covered." *Outboard Marine,* 154 Ill.2d at 104; *see also Crete-Monee Sch. Dist. 201-U v. Indiana Ins. Comp.,* No. 96 C 0275, 1997 WL 305310, *2 (N.D. Ill. May 30, 1997) ("the known loss doctrine essentially reforms the contract to exclude the known loss, apparently under the presumption that no reasonable insurer would assume such a 'risk'").

The Illinois Appellate Court, Second District, elucidates the known loss doctrine and the Illinois Supreme Court's decision in *Outboard Marine* as such:

> For example, suppose an individual, while standing in his basement in three feet of water, calls an insurance company to obtain flood insurance. Later, the insurer argues that it is not liable for any loss because under the known loss doctrine the individual knew that he had already suffered or would suffer a loss from the water. **In such a case, the insurer would not have to show that the insurance policy excluded known losses to avoid liability; it would have to show only that the insured knew that there was a substantial probability he would suffer a loss from the water.**

5

*Missouri Pac. R.R. v. American Home Assur. Co.,* 286 Ill.App.3d 305, 316, 221 Ill.Dec. 648, 675 N.E.2d 1378 (Ill.App.Ct. 1997) (emphasis added). Because the known loss doctrine goes to whether the insurance policy has been triggered, the Court turns to Erie's extrinsic evidence on the issue of known loss before determining whether a duty to defend existed under the Printers Errors and Omissions endorsement. *See id.*; *see also International Envtl. Corp. v. National Fire Ins. Comp.,* 860 F.Supp. 511, 517 (N.D. Ill. 1994).

Here, Erie contends that Manade knew of the September 11, 2003 duplication error when she purchased the Printers Errors and Omissions coverage for Unicomm Direct on October 23 or 24, 2003. Erie bases its argument on Manade's September 18, 2003 letter to Grey Direct acknowledging the September 11, 2003 duplication error and Manade's September 24, 2003 agreement with Grey Direct to obtain "Errors and Omissions Insurance policies." Based on this undisputed evidence, there is no doubt that Manade knew of the September 11, 2003 duplication error when she purchased the Printers Errors and Omissions coverage on October 23 or 24, 2003. In addition, there is no evidence in the record that the parties intended the September 11, 2003 duplication error to be covered under the Printers Errors and Omissions coverage. Accordingly, Erie did not have a duty to defend or indemnify Unicomm Direct in the underlying breach of contract claim as matter of law. *See Outboard Marine,* 154 Ill.2d at 104 (if insured has evidence of loss when purchasing policy, the loss is "uninsurable" because risk is known).

Although the Printers Errors and Omissions coverage was never triggered, Grey Direct nonetheless contends that Erie is estopped from arguing that it does not have a duty to defend because Erie did not defend the lawsuit under a reservation of rights or seek a timely declaratory judgment that there was no insurance coverage under the policy. *See Employers Ins. of Wausau*

6

*v. Ehlco Liquidating Trust,* 186 Ill.2d 127, 150-51, 153, 1237 Ill.Dec. 82, 708 N.E.2d 1122 (1999). Indeed, under Illinois law, if an insurer refuses to defend an insured and "is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to the coverage." *Id.* The estoppel doctrine, however, only applies when an insurer has breached its duty to defend. *Id.* at 151. As discussed, because the duplication error was a known loss that was uninsurable, Erie did not have a duty to defend or indemnify Unicomm Direct in the first instance.[2] Therefore, Grey Direct's estoppel argument fails.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

Dated: November 7, 2005

ENTERED

_____
**AMY J. ST. EVE**
**United States District Judge**

---

[2] Plaintiff's reliance on *Petersen Sand & Gravel, Inc. v. Maryland Cas. Co.,* 881 F.Supp. 309, 314 (N.D. Ill. 1995) is misplaced. In *Petersen*, the court concluded that the known loss doctrine is similar to the late notice defense, and thus, the estoppel doctrine applies. The court in *Petersen*, however, relied solely on cases that discussed the late notice defense and that pre-dated the Illinois Supreme Court's decision in *Outboard Marine*. *Id.* In any event, the Court is obligated to follow controlling Illinois Supreme Court authority concerning the known loss doctrine as outlined in *Outboard Marine,* specifically, that if an insured knows or has reason to know that she has already suffered a loss at the time of purchasing insurance coverage, this "known loss" is uninsurable, and the insurer has no duty to defend or indemnify in the first place. *See Outboard Marine v. Liberty Mut. Ins.*, 154 Ill.2d 90, 104, 180 Ill.Dec. 691, 707, 607 N.E.2d 1204, 1220 (1992) ("insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio*").